T.C. Summary Opinion 2004-19

UNITED STATES TAX COURT

RENE D. AND ROSEMARY S. VALDES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2357-00S.              Filed February 25, 2004.

Rene D. Valdes, pro se.

<u>Lorianne D. Masano</u>, for respondent.


POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 1996 | $10,950 | $2,190.00 |
| 1997 | 10,007 | 2,001.40 |
| 1998 | 11,643 | 2,328.60 |

After a concession by respondent,[2] the issues are (1) whether petitioners[3] are liable for taxes on unreported income in the amounts of $32,810, $33,071, and $36,392 for the taxable years 1996, 1997, and 1998, respectively, and (2) whether petitioners are liable for accuracy-related penalties under section 6662(a) for the years in issue. Petitioners resided in Tampa, Florida, at the time the petition was filed.

## Background

During the examination of petitioners' 1996, 1997, and 1998 Federal income tax returns, petitioner provided to respondent unorganized boxes of receipts for his business and personal expenses. Respondent calculated petitioner's business expenses using petitioners' 1996, 1997, and 1998 returns. Respondent

---

[2] Respondent conceded that petitioners are entitled to a dependency exemption for their daughter, Robyn M. Valdes, in the 1997 taxable year.

[3] Petitioner Rosemary S. Valdes did not appear at the trial and did not sign the stipulation of facts. With respect to her, we dismiss this case for failure to prosecute. Rule 123(b). The decision, when entered, will be in the same amount as ultimately determined against petitioner Rene D. Valdes. In the opinion, references to petitioner are to Rene D. Valdes.

calculated petitioner's personal expenses for his 1996 and 1997 expenditures using petitioner's receipts.  Petitioner did not provide receipts for his 1998 personal expenses, and respondent calculated the 1998 expenditures by averaging the 1996 and 1997 expenditures.  Using the cash expenditures method, respondent reconstructed petitioner's business income as follows:

| Year | Reported Income | Reported Expenses | Unreported Income |
|------|-----------------|-------------------|-------------------|
| 1996 | $83,353 | $116,163 | $32,810 |
| 1997 | 37,804 | 70,875 | 33,071 |
| 1998 | 39,064 | 75,456 | 36,392 |

Petitioner contends that the unreported income represents nontaxable loans or gifts he received from his mother and his aunt.

This case, upon petitioner's requests, was continued twice. The second continuance was granted on petitioner's representations that he could obtain from Merrill Lynch and Dean Witter "cashier's checks that were handed to me from my mother to pay * * * [my] bills."  He alleged that he had the account numbers of his mother's accounts at both firms, and that he could track the funds from those accounts into his hands.  According to petitioner, the withdrawals were "in cashier's checks at the time of withdrawal made out to * * * [petitioner's mortgage company]".

At trial 16 months later, petitioner testified that he "didn't have her [his mother's] account numbers * * * until after she's [sic] passed away".  His mother died approximately 5 months prior to the trial, and well after his earlier representations

that he had her account numbers.  He further testified that his mother would sell her stocks and bonds and that "she would always go to the bank and draw it out in cash."  There was no mention of the alleged amounts paid to petitioner's mortgage company by cashier's checks drawn on his mother's accounts.

## Discussion

Unreported Income

A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.  If the taxpayer does not, the Commissioner is authorized by section 446 to reconstruct the taxpayer's income.  Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989).  The source and application of funds method (also referred to as the cash expenditures method) is an accepted method to reconstruct income.  United States v. Johnson, 319 U.S. 503, 517-518 (1943).

The cash expenditures method is based on the assumption that the amount by which a taxpayer's expenditures during a taxable period exceed his reported income has taxable origins, absent some explanation by the taxpayer.  Burgo v. Commissioner, 69 T.C. 729, 742 (1978).  To prevail, petitioner must establish that either someone else made the expenditures or that the funds used for the expenditures were obtained from nontaxable sources, such as loans, gifts, inheritances, or assets available at the

beginning of the tax year.  Petzoldt v. Commissioner, supra at 695; Burgo v. Commissioner, supra at 743.

At one time, petitioner asserted that the unreported income represents nontaxable loans or gifts from his mother in the approximate amounts of $7,000 and $49,000 for the 1996 and 1997 taxable years, respectively, and $4,000 from his aunt.[4]  At trial, however, he did not testify as to any specific amounts that he received.  As discussed, according to petitioner, his mother and aunt sold capital assets and gave the proceeds to him in the form of either cash or cashier's checks, and he used these funds to pay his personal expenses.  Petitioner, however, did not provide any documentation to substantiate these purported loans or gifts.  The record is devoid of any loan agreements; Form 1099-B, Proceeds from Broker and Barter Exchange Transactions, relating to his mother's or aunt's sale of capital assets; or the alleged cashier's checks.  See Wynn v. Commissioner, T.C. Memo. 1996-415.  Additionally, upon examination of respondent's financial information concerning petitioner's mother and aunt for 1995, 1996, and 1997, it does not appear that either had the financial capability to make such large loans or gifts to petitioner.[5]  See Holland v. United States, 348 U.S. 121, 135-137

---

[4]  We note that except for 1997, even if these amounts are correct, there still are substantial understatements of income.

[5]  From respondent's summary of records, it appears that

(continued...)

(1954).  Finally, we are struck by petitioner's inability to tell the same story twice.  All of these considerations lead us to conclude that petitioner's allegations have more mendacity than truthfulness.[6]  We sustain respondent's determinations as to the unreported income.

Accuracy-Related Penalties

Section 6662 imposes an accuracy-related penalty "equal to 20 percent of the portion of the underpayment" of tax attributable to "Any substantial understatement of income tax".  Sec. 6662(a) and (b)(2).  A substantial understatement of income tax exists if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000.  Sec. 6662(d)(1)(A).

However, "No penalty shall be imposed * * * if it is shown that there was a reasonable cause * * * and that the taxpayer acted in good faith".  Sec. 6664(c).  Petitioner failed to address the accuracy-related penalties at trial and offered no

_____

[5](...continued)
petitioner's mother received $4,881 from two sales of stock in 1997.  There is no evidence to indicate that petitioner received these proceeds.  His aunt did not file tax returns for 1995 and 1996, and respondent's summary of records indicates that she received total income of $13,075 in 1995 and $10,635 for 1996.

[6]  Given the lack of records and the lack of credibility in petitioner's testimony, sec. 7491(a), pertaining to shifting the burden of proof, has no application here.

evidence that he had reasonable cause for the understatements or that he acted in good faith.  Accordingly, we sustain respondent's determinations.[7]

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect respondent's concession,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

---

[7] Considering the amount of unreported income, respondent has satisfied the burden of production with regard to the penalties.  See sec. 7491(c).